USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/20/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

AMGUARD INSURANCE COMPANY,

                          Plaintiff,

              -v-

GETTY REALTY CORP., GETTY PROPERTIES
CORP., LEEMILT'S PETROLEUM, INC., ORANGE
AND ROCKLAND UTILITIES, INC., 9W AUTO
CENTER, INC. d/b/a GETTY LOC #379, and
ARCHERY PAINT & PLASTER, INC.,

                          Defendants.

------------------------------------------------------------X

GETTY REALTY CORP., GETTY PROPERTIES
CORP., AND LEEMILT'S PETROLEUM, INC.,

                          Third-party
                          Plaintiffs,

              -v-

LEWIS TREE SERVICE, INC.,

                          Third-party
                          Defendant.

------------------------------------------------------------X

14 Civ. 9448 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

          This case involves a claim that trees fell onto a car wash from a neighboring plot of land,

causing damage.  Pending is a motion to dismiss by third-party defendant Lewis Tree Service,

Inc. ("Lewis"), which was allegedly contracted to inspect and assure the safe condition of the

offending trees.  Lewis seeks, under Federal Rule of Civil Procedure 12(b)(6), dismissal of the

claims against it brought by third-party plaintiffs Getty Realty Corp., Getty Properties Corp., and

Leemilt's Petroleum (collectively, "Getty").  For the reasons that follow, Lewis's motion is denied.

## I.    Background[1]

On November 26, 2014, AmGuard Insurance Company ("AmGuard") brought this lawsuit, as subrogee for its insureds, JR Realty & Property Management Corporation and 9W Auto Wash Corporation ("JR Realty").  Dkt. 153, Ex. 1.  AmGuard sued Getty and Orange and Rockland Utilities, Inc. ("O&R") for negligence resulting in damage to JR Realty's car wash (the "Car Wash").  *Id*.  On July 7, 2015, AmGuard filed an amended complaint, adding as defendants 9W Auto Center, Inc. ("9W Auto") and Archery Paint & Plaster, Inc. ("Archery Paint").  Getty ATP-Compl. ¶ 11; FAC.

In the FAC, AmGuard alleges that on August 8, 2013, the Car Wash, located in Haverstraw, New York, was damaged when a storm caused "a number of unkempt and obviously unsafe trees" located on the adjoining property to fall on it.  Getty ATP-Compl. ¶¶ 13–14; FAC ¶ 14.  The FAC alleges that the trees that fell were located on property owned by Getty and/or a "right of way" belonging to O&R that passes through Getty's property.  Getty ATP-Compl. ¶ 14. The FAC refers to the area containing the trees as "The Alleged Area of Trees in Question," *see id.*, but does not identify more specifically the trees that struck the Car Wash.

On July 20, 2015, Getty answered.  Dkt. 153, Ex. 4.  Getty denied liability, and brought crossclaims against 9W Auto, Archery Paint, and O&R for contribution, common-law indemnity, and contractual indemnity.  *Id.*

---

[1] The background facts are drawn from Getty's Amended Third-Party Complaint, Dkt. 153 ("Getty ATP-Compl."), and the exhibits attached thereto, including AmGuard's original complaint, Dkt. 153, Ex. 1; Getty's answer to AmGuard's complaint, Dkt. 153, Ex. 2; AmGuard's First Amended Complaint, Dkt. 153, Ex. 3 ("FAC"); and Getty's answer to AmGuard's FAC, Dkt. 153, Ex. 4.

On July 9, 2015, Getty filed a third-party complaint against Lewis.  Dkt.  88.  Later, on September 15, 2015, after Lewis had moved to dismiss that complaint, Dkt. 135, Getty filed the Amended Third-Party Complaint.  Getty ATP-Compl.  There, Getty sought—in the event that it were found liable to AmGuard—contribution and/or indemnification from Lewis.  Getty ATP-Compl. ¶¶ 32, 34–35.

### A.    Getty's Claims Against Lewis

In its third-party complaint, Getty alleges the following.[2]  At all relevant times, O&R was the dominant owner, pursuant to a valid easement, of the area containing the trees at issue.  Getty ATP-Compl. ¶ 16.  Accordingly, O&R and/or its agents and employees had the exclusive right and duty to maintain and/or remove trees in that area.  *Id.* ¶¶ 18–19.  O&R contracted with Lewis to perform vegetation maintenance, which included inspecting, maintaining, trimming, and removing trees in that area.  *Id.* ¶ 20.

In the months before August 8, 2013, O&R directed Lewis to inspect and perform maintenance and/or removal of "a certain tree or trees [within the area], but Lewis failed or neglected to do so."  *Id.* ¶¶ 23–24.  O&R and its servants, including Lewis, also "failed to safely maintain [the] right of way in order to prevent harm, failed to warn or notify others of the allegedly dangerous condition of the trees, failed to take timely and proper measures to prevent damage and failed to comply with [O&R's] own plans and requirements for proper care and maintenance of the trees."  *Id.* ¶ 26 (incorporating FAC ¶ 28).  O&R and Lewis's negligence in maintaining and inspecting the trees in the area allowed "apparently and evidently dangerous"

---

[2] The Court assumes these facts to be true for the purpose of resolving the instant motion, drawing all reasonable inferences in favor of Getty.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  Because Getty's third-party claim is premised on a finding of liability against it, this claim also assumes, without conceding, such liability.

trees to remain in place, foreseeably causing the harm that befell the Car Wash.  *Id.* ¶ 25
(incorporating FAC ¶ 28).

      **B.**     **Lewis's Motion to Dismiss**

      On October 8, 2015, Lewis moved under Rule 12(b)(6) to dismiss Getty's claims against
it, Dkt. 168, and filed a declaration, Dkt. 169, and memorandum of law, Dkt. 170 ("Lewis Br."),
in support.  On October 29, 2015, Getty filed a brief in opposition.  Dkt. 179 ("Getty Br.").  On
November 5, 2015, Lewis filed a reply brief.  Dkt. 184.

**II.**     **Applicable Legal Standards**

      To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough
facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.
544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the defendant is liable for the misconduct
alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where,
as a matter of law, "the allegations in a complaint, however true, could not raise a claim of
entitlement to relief."  *Twombly*, 550 U.S. at 558.

      In considering a motion to dismiss, a district court must "accept[] all factual claims in the
complaint as true, and draw[] all reasonable inferences in the plaintiff's favor."  *Lotes Co. v. Hon
Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v. 5th
Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010)).  However, "the tenet that a court must accept
as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*,
556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice."  *Id.*  "[R]ather, the complaint's [*f*]*actual* allegations must
be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim

plausible." *Arista Records*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at

555, 570) (internal quotation marks omitted) (emphasis in *Arista Records*).

## III.    Discussion

### A.    Timeliness of the Motion to Dismiss

The Court first addresses Getty's argument that Lewis's motion to dismiss was untimely.

On September 24, 2015, the Court ordered Lewis to file any motion to dismiss by October 8,

2015.  Dkt. 158.  That order superseded the deadline previously set.  Lewis filed its motion to

dismiss on October 8, 2015.  Getty Br. 3.  Lewis's motion was therefore timely.

### B.    Choice of Law

Because the claims in this case arise under state law, a threshold question is which state's

law applies.  Federal Rule of Civil Procedure 14(a) "permits a defending party to implead

another who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim

against the third-party plaintiff," *Bank of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 437–38

(2d Cir. 2000) (internal quotation marks omitted), but it "provides only the procedural

mechanism for impleader; the substantive merit of the action depends on the federal or state

theory of contribution, indemnity or subrogation, or any other theory asserted in the third-party

complaint."  *Telecom Intern. Am., Ltd. v. AT&T Corp.*, No. 96 Civ. 1366 (AKH), 1999 WL

777954, at *4 (S.D.N.Y. Sept. 30, 1999).  Accordingly, in diversity actions, federal courts apply

state substantive law, *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996), and adopt

the choice of law analysis of the forum state, *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue

Shield*, 448 F.3d 573, 582 (2d Cir. 2006).

Neither Getty nor Lewis has addressed choice of law.  But the allegedly tortious incident

causing damage to the Car Wash occurred in New York.  And where, as here, "[t]he parties'

briefs assume that New York law controls, . . . such 'implied consent . . . is sufficient to establish choice of law.'" *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (quoting *Tehran–Berkeley Civil & Envtl. Eng'rs v. Tippetts–Abbett–McCarthy–Stratton*, 888 F.2d 239, 242 (2d Cir. 1989)); *see* Lewis Br. 8–9 (assuming New York law applies); Getty Br. 11 (describing New York law as "controlling"). Accordingly, the Court will apply New York substantive law to resolve Lewis's motion.

### C.   Getty's Claim for Common-Law Contribution or Indemnity

Getty argues that it is entitled to common-law contribution and/or indemnity from Lewis because, if AmGuard's insured is held to have suffered loss due to negligence, the negligent conduct was ultimately Lewis's. Getty ATP-Compl. ¶¶ 34–35.

Common-law contribution and common-law (or implied) indemnity are similar but distinct claims. The New York Court of Appeals has explained the "important substantive distinctions" between the two as follows:

> Basically, in contribution the loss is distributed among tort-feasors, by requiring joint tort-feasors to pay a proportionate share of the loss to one who has discharged their joint liability, while in indemnity the party held legally liable shifts the entire loss to another.

*Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.2d 21, 23–24 (1985). The Court addresses Lewis's claims for contribution and indemnity in turn.

### 1.   Contribution

New York law permits contribution as a remedy "to [a]ny tortfeasor who pays more than its fair share of a judgment—as apportioned by the factfinder in terms of relative culpability" against other joint tortfeasors. *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 556 (1992) (citing N.Y. C.P.L.R. §§ 1401–02). "The crucial element in allowing a claim for contribution to proceed is that 'the breach of duty by the contributing party must have had a part in causing or

augmenting the injury for which contribution is sought.'" *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 319, 324 (S.D.N.Y. 2010) (quoting *Raquet v. Braun*, 90 N.Y.2d 177, 183 (1997)). Therefore, to succeed on its claim for contribution, Getty must establish that Lewis's negligence caused or contributed to the damage to the Car Wash.

Here, Getty alleges that: (1) O&R and/or its agents "had the exclusive duty to maintain and/or remove" the trees in the area in question, Getty ATP-Compl. ¶ 18; (2) Lewis was such an agent, having contracted with O&R to inspect, maintain, and remove trees in that area, *id.* ¶ 20; (3) Lewis performed vegetation maintenance in the area, *id.* ¶¶ 21–22; (4) Lewis was directed by O&R to perform inspections, maintenance, and/or removal of "a certain trees or trees" within the area, but failed or neglected to do so, *id.* ¶¶ 23–24; (5) O&R and Lewis's alleged lapses allowed "apparently and evidently dangerous" trees to exist on or near [O&R's] right of way, and thereby created foreseeable harm to the Car Wash, *id.* ¶ 25 (incorporating FAC ¶ 28); and (6) Lewis failed to safely maintain the right of way, warn others of the trees' dangerous condition, or comply with O&R's requirements for proper tree care and maintenance, *id.* ¶ 26 (incorporating FAC ¶ 28).

These allegations are sufficient to state a claim for contribution. Assuming that Getty were found liable based on the claim that the negligent care and inspection of the trees within the easement caused damage to the adjoining Car Wash, Getty has adequately pled that Lewis was at least among those negligent.

Lewis makes several arguments for dismissal. First, it argues, Getty's contribution claim fails to adequately allege the tort elements of breach and causation. Specifically, Lewis argues, Getty has failed "to identify the tree or trees that damaged the Car Wash." Lewis Br. 7. Getty's failure to allege negligence by Lewis with respect to any particular tree, Lewis argues, creates

only the "'sheer possibility' that Lewis acted unlawfully, which is insufficient to maintain a cause of action." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

Although invoking *Twombly* and *Iqbal*, Lewis misreads these precedents to impose an unduly stringent standard for pleadings under Federal Rule of Civil Procedure 8.  As the Second Circuit has explained:

> [T]he notion that *Twombly* imposed a heightened standard that requires a complaint to include specific evidence [and] factual allegations in addition to those required by Rule 8 . . .  is belied by the *Twombly* opinion itself.  The Court noted that Rule 8(a)(2) of the Federal Rules of Civil Procedure 'requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'

*Arista Records*, 604 F.3d at 119 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).  Indeed, in *Twombly*, the Court emphasized that it was "not requiring heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "Nor did *Iqbal* heighten the [Rule 8] pleading requirements." *Arista Records*, 604 F.3d at 120.

Lewis's notion that Getty, to state a claim for contribution, must pinpoint a particular tree that Lewis mishandled would apply, if anything, a standard akin to (if not above) the heightened pleading requirement of Federal Rule of Civil Procedure 9(b), which applies to fraud claims. *Compare* Fed. R. Civ. P. 8(a)(2) (requiring only a "short and plain statement of the claim showing that the pleader is entitled to relief"), *with* Fed. R. Civ. P. 9(b) (requiring party to "state with particularity the circumstances constituting fraud or mistake").  Rule 9(b), however, does not apply to this garden-variety tort case.  And requiring such precise pleading is particularly inappropriate in the context of a claim for contribution or indemnity like Getty's.  That is because the liability of the third-party defendant (Lewis) to the third-party plaintiff (Getty) is

conditioned on a finding of the third-party plaintiff's own liability to the plaintiff (AmGuard), which the third-party plaintiff disputes. Getty, in fact, stoutly denies liability. It contends that any tree-imposed damage was caused by a violent storm on August 8, 2013, not by negligence. ATP-Compl. ¶ 15. In pursuing claims against Lewis, Getty merely asserts that *if* it were held liable for damage to the Car Wash, then Lewis—by virtue of its own negligence—would in turn be liable to Getty for contribution and/or indemnity. *Id.* ¶ 35. And AmGuard's FAC itself—the source of the allegation that the damage to the Car Wash resulted from negligent tree-maintenance—does not identify a specific tree or trees that damaged its insured's car wash. Lewis Br. 7.

Under these circumstances, Getty was not obliged, in its complaint, to pinpoint the "unkempt" or "obviously unsafe" tree that caused the damage. *See Amusement Indus., Inc.*, 693 F. Supp. at 309 ("For purposes of the notice pleading requirements of Fed. R. Civ. P. 8, it is enough that [third-party plaintiff] has referenced plaintiff's own allegations on [a point of liability]."). Getty's allegations that (1) Lewis had a contractual duty to maintain the area encompassing the trees that AmGuard alleges damaged the Car Wash; (2) Lewis breached that duty; and (3) ill-maintained trees within the area that Lewis contracted to maintain caused the damage, suffice. These allegations give Lewis "fair notice of . . . the grounds upon which [Getty's contribution claim] rests." *Iqbal*, 556 U.S. at 698–99 (quoting *Twombly*, 550 U.S. at 555).

Lewis alternatively argues that there is an "obvious alternative explanation for the incident in this matter"—namely, a "microburst" storm on the date in question that contained winds in excess of 70 miles per hour. Lewis Br. 6, 8. To substantiate this factual claim, Lewis attaches a report from the National Climatic Data Center (NCDC), documenting such a storm.

*See* Dkt. 170, Ex. 1.[3]  Lewis claims that the microburst, to the exclusion of any party's

negligence, was the source of the damage to the Car Wash.

This bid fails.  The Court assumes, *arguendo*, that the NCDC report is a public record of

which it may properly take notice.[5]  But the presence of a strong storm is not at all inconsistent

with liability for negligence.  The thrust of the FAC is that negligent maintenance of the trees in

the area left them vulnerable to falling during a storm—and this thesis sits comfortably alongside

the fact of a strong storm on the day in question.  For this reason, *New Jersey Carpenters Health*

*Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 121 (2d Cir. 2013), on which Lewis

relies, does not favor dismissal.  There, the Second Circuit held that, to warrant dismissal, a

competing inference must "impugn the inference of liability that the [non-moving party] asks

[the Court] to draw."  709 F.3d at 121 n.5.  That is not the case here, as it is plausible that the tree

or trees in question fell because Lewis's negligent care made them vulnerable to such a storm.

The Court therefore denies the motion to dismiss Getty's claim for contribution.

---

[3] The FAC and third-party complaint merely refer generally to a "storm."  *See* ATP-Compl. ¶ 13;
FAC ¶ 14.

[5] In resolving a motion to dismiss, the Court is limited to reviewing matters within the four
corners of the complaint, documents incorporated therein, and matters of which it can take
judicial notice.  *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).
 Courts have taken notice of similar reports by government agencies responsible for chronicling
weather events.  *See, e.g.*, *Chubb & Son, Inc. v. Kelleher*, No. 92 Civ. 4484 (CBA), 2006 WL
2711543, at *4 n.2 (E.D.N.Y. Sept. 21, 2006) (National Oceanic and Atmospheric
Administration records reflecting date Hurricane Wilma struck a particular area); *Mamiye Bros.*
*v. Barber S.S. Lines, Inc.*, 241 F. Supp. 99, 116 (S.D.N.Y. 1965) (forecasts from United States
Weather Bureau).

### 2.    Common-Law Indemnity

Under New York law, common-law (or implied) indemnity "is a restitution concept which results in a shifting of the loss 'because to fail to do so would result in the unjust enrichment of one party at the expense of the other.'" *Facilities Dev. Corp. v. Miletta*, 584 N.Y.S.2d 491, 495 (3d Dep't 1992) (quoting *Mas v. Two Bridges Assoc.*, 75 N.Y.2d 680, 690 (1990)).  Unlike contribution, common-law indemnity is "barred altogether where the party seeking indemnification was itself at fault, and both tortfeasors violated the same duty to the plaintiff." *Monaghan v. SZS 33 Associates, L.P.*, 73 F.3d 1276, 1284 (2d Cir. 1996).  It is available only where one tortfeasor is held liable *purely* on account of another's negligence. *Matter of Poling Transp. Corp.*, 784 F. Supp. 1045, 1049 (S.D.N.Y. 1992), *as amended* (Mar. 11, 1992) (citing *Guzman,* 69 N.Y.2d 559, 567–68 (1987)).  Accordingly, implied indemnity is "frequently employed in favor of one who is vicariously liable for the tort of another." *Rosado*, 66 N.Y.2d at 24.

"[A] cause of action for common-law indemnification can be sustained only if: (1) the party seeking indemnity and the party from whom indemnity is sought have breached a duty to a third person, and (2) some duty to indemnify exists between them." *Highland Holdings & Zito I, L.P. v. Century/ML Cable Venture*, No. 06 Civ. 181 (GBD), 2007 WL 2405689, at *4 (S.D.N.Y. Aug. 24, 2007), *aff'd sub nom. In re Century/ML Cable Venture*, 311 F. App'x 455 (2d Cir. 2009) (quoting *Ins. Co. of Pa. v. HSBC Bank USA*, 829 N.Y.S. 2d 511, 518 (1st Dep't 2007)).  Importantly, the duty to indemnify "is not a duty running from the indemnitor to the injured party, but rather is a separate duty owed the indemnitee by the indemnitor." *Raquet*, 90 N.Y.2d at 183 (internal citations omitted).

11

In light of these principles, Getty's claim for common-law indemnity will require it to show both that: (1) Lewis breached its duty to JR Realty, AmGuard's insured, by negligently maintaining and/or removing, or failing to maintain or remove, trees in area in question; and (2) Lewis has a duty to indemnify Getty.

Lewis argues that the first element is not adequately pled for the same reasons that it challenges Getty's claim for contribution—that Getty does not point to a specific tree or trees that were ill-maintained, and that the microburst, not negligence, accounts for the fallen trees. Lewis Br. 6–8. For the reasons set out above, these arguments do not support dismissal.

As to the second element, Lewis argues that Getty's complaint does not support the inference of a duty running from Lewis to Getty. Lewis Br. 7. Getty counters that it is owed such a duty on two independent grounds: (1) as a third-party beneficiary of the maintenance contract between Lewis and O&R, or (2) as the servient owner of the area that Lewis contracted to maintain. *See* Getty Br. 12. The first ground would not support common-law (as opposed to contractual) indemnification, because to plead a common-law duty to indemnify, Getty must allege that Getty is susceptible to vicarious liability based on Lewis's *tortious* conduct or because the law may impute liability to Getty based on its relationship with Lewis.[6]

But Getty does adequately plead a duty based on the second theory, *i.e.*, that the trees were located on an easement on its property, of which Getty is the servient owner (and O&R is the dominant owner). "Although the owner of the servient tenement generally has no affirmative duty to repair or maintain, there are recognized exceptions to the rule." *Cardinal v. Long Island*

---

[6] *See Amusement Indus., Inc.*, 693 F. Supp. 2d at 327 (third-party plaintiff did not state claim for indemnity against third-party defendant, where third-party plaintiff "ha[d] not explained how he could be found vicariously liable—or liable in any other way imputed by law—because of his relationship with [third-party defendant]").

*Power Auth.*, 309 F. Supp. 2d 376, 385 (E.D.N.Y. 2004).  As the Second Circuit has explained, the circumstances that define an easement—including "occupancy, ownership, control, or a special use of the premises"—may determine whether the servient easement owner owes a duty to third parties.  *See Sutera v. Go Jokir, Inc.*, 86 F.3d 298, 302–03 (2d Cir. 1996).  On the facts alleged here, it is plausible that Getty retained a non-delegable duty to safely maintain the trees within the easement so as to protect its neighbor, JR Realty, from harm from falling trees.  Getty therefore plausibly claims to face vicarious liability if negligence is found on the part of dominant owner O&R for failing to maintain these trees.  It follows that Getty plausibly could be held vicariously liable for the negligence of the independent contractor (Lewis) whom O&R hired to discharge this duty.

   *Mauro v. McCrindle*, 419 N.Y.S.2d 710 (2d Dep't 1979), *aff'd*, 52 N.Y.2d 719 (1980), is illustrative.  There, the Second Department held that "a property owner [may] bypass his contractor and directly seek indemnification from the contractor's negligent employee," "even in the absence of a direct contractual relationship."  *Id.* at 712, 715.  It explained that the owner had a valid claim for indemnity against the contractor, who in turn had a claim against the employee.  *Id.* at 715.  Therefore, permitting the owner to seek indemnification directly from the contractor's negligent employee "merely eliminate[d] a step in the indemnity cycle, thereby achieving directly what . . . could have been achieved through indirection."  *Id.*

   So too, here.  As pled, the facts plausibly support that Getty may be held liable for negligence based on Lewis's negligence, such that Lewis would have a duty to indemnify Getty for such liability.  Getty therefore states a claim for common-law indemnity.

### D.    Getty's Claim for Contractual Indemnity

Getty also alleges that it is entitled to contractual indemnity from Lewis because, if Getty is found liable to AmGuard, this liability will derive from Lewis's failure to discharge its duties under its contract with O&R to inspect and maintain the trees in question.  Getty ATP-Compl. ¶¶ 31–32.

To be sure, Getty does not quote this contract (to which it may not yet have had access). And it does not allege that the contract contained an *express* indemnity clause.  But Getty may yet state a claim if the facts support the inference that Getty has an *implied* contractual right to indemnification by Lewis.  *See Amusement Indus., Inc.*, 693 F. Supp. at 310 ("New York courts have looked to a contractual relationship between two parties to determine whether, even without an express indemnity clause in the contract, an existing contractual relationship suggests an implied obligation of indemnity.") (collecting cases).

Under New York law, "an implied right to indemnification may be based on the special nature of a contractual relationship between parties."  *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346, 351 (2d Cir. 1986); *Swanson v. 97 Fifth Avenue Corp.*, 141 N.Y.S.2d 125, 127 (Sup. Ct. Bronx County 1955), *aff'd*, 149 N.Y.S.2d 208 (1st Dep't 1956) (property owner may seek indemnification from independent contractor for non-performance of contractual duty independently owed to owner); *Wainwright v. Matrix Asset Advisors, Inc.*, No. 05 Civ. 227 (DLC), 2006 WL 531241, at *2 (S.D.N.Y. Mar. 6, 2006) (quoting *Pro Bono Invs., Inc. v. Gerry*, No. 03 Civ. 4347 (JGK), 2005 WL 2429787, at *16 (S.D.N.Y. Sept. 30, 2005) (implied indemnification can arise out of contractual relationship in which "the proposed indemnitee holds a non-delegable duty to the plaintiff, the responsibility for which he transfers to the proposed indemnitor by agreement")).

14

Here, Getty alleges that it has a right to implied contractual indemnity because Getty, as the property owner, was a third-party beneficiary of the tree-maintenance contract between Lewis and O&R.  Getty ATP-Compl. ¶¶ 29, 32.  To state a *prima facie* claim as a third-party beneficiary, a party must plead:

> (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [the claimant's] benefit and (3) that the benefit to [the claimant] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost.

*Cal. Pub. Emps. Ret. Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 434–35, (2000) (internal quotation marks omitted).  "Although a third party need not be specifically mentioned in the contract before third-party beneficiary status is found, New York law requires that the parties' intent to benefit a third party must be shown on the face of the agreement."  *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 725 F. Supp. 712, 733 (S.D.N.Y. 1989).

Getty's third-party complaint pleads these elements.  It alleges that there was a "written contract and/or agreement" between Lewis and O&R.  Getty ATP-Compl. ¶ 20.  And the facts alleged make it plausible that Getty, as servient owner, was an intended and immediate, rather than an incidental, beneficiary of the contract entered into by its easement holder, O&R, to which Getty had assigned "the exclusive [right and] duty to maintain and/or remove" the trees in question.  Getty ATP-Compl. ¶¶ 18, 29.

Although not squarely on point, the decision in *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660 (2d Cir. 1996), is instructive.  There, a law firm sued a corporation for breach of contract, seeking fees that the firm had earned by representing an executive of the corporation's subsidiary in prior litigation.  *Id.*  The Second Circuit reversed the dismissal of the firm's contract claim.  It reasoned that, although the firm was not mentioned in the contract, "it is

reasonable to assume that a provider of legal services is a third-party beneficiary of an agreement to pay for those services." *Id.* at 661–63.

Similarly here, it is reasonable to assume that the servient owner of a piece of property stands to benefit immediately from services performed to maintain a portion of that property—even if that property is the subject of an easement.  Accordingly, the facts Getty alleges support the inference that it was the intended beneficiary of O&R's vegetation maintenance contract with Lewis.  Following discovery, Lewis will, of course, be at liberty to contest this inference.  It may argue, for example, at summary judgment and/or at trial, that the terms of the contract—which the Court expects will surface in discovery—address this issue in a manner unhelpful to Getty.  But at this early, pleading stage, Getty has pled enough facts to state a claim for contractual indemnity.

## CONCLUSION

For the foregoing reasons, the Court denies Lewis's motion to dismiss Getty's amended third-party complaint.  The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 168.


SO ORDERED.

Paul A. Engelmayer
United States District Judge


Dated: November 20, 2015
       New York, New York

16